Thank you. Good morning, Counsel. Judge Gilman, Judge Hood, and I look forward to your argument this morning. And with that, the petitioner may begin. I understand that the petitioner has requested five minutes for rebuttal, and we will notify you accordingly. You may proceed. Thank you. Good morning, Your Honors. May it please the Court, my name is David Thrompson on behalf of Petitioner Shahzad Raja. I'd like to focus in just on where we disagree with the government. There's a lot of background. This is a long, complicated case, but the actual point where we disagree is quite narrow and quite easily defined. And it's whether or not the statute under which a petitioner was convicted, Pennsylvania Statute Section 780.113.A30, possession with intent to distribute a controlled substance, is or is not a divisible statute for purposes of determining whether or not a strict categorical approach or a modified categorical approach is used in proceeding forward. And as I understand the government's position, their argument tracks very closely at Third Circuit decision, United States v. Abbott, which relies on two... Just a moment. We can't hear counsel. Chantel? Is this better? I picked up my speaker. There you go. Is that better? Yes, so you will have to go back and start the sentence again about starting with where the differences are. Thank you, Your Honor. I will do that, and I apologize for the technology on our end. We disagree on whether or not the statute under which a petitioner was convicted, the Pennsylvania Statute 780.113.A30, possession with intent to distribute a controlled substance, is a divisible statute. And that divisibility determination determines whether or not the court uses a strict categorical approach or a modified categorical approach. And that's really the only point on which we're disagreeing in this instance here. The government's argument largely tracks a case, United States v. Abbott from the Third Circuit, which finds that it is a divisible statute, relying on two particular arguments. It cites to a Pennsylvania state law case, which in a footnote says that the identity of a substance under a conviction for this is an element of the offense. This was a case that involved a double jeopardy issue and makes that reference. They also rely on language in the court cases that anything which affects a sentence is an element of the offense. They rely on an apprendi and a lien for those propositions. Now, to start with Swavely, as we look to what a state court has criminalized, how they define their own criminal statute, the key point is the state. How is the legislature chosen to write the statute? How has the court in that state interpreted it? And beyond Swavely, there's just a wealth of case law that describes how the courts in Pennsylvania view the particular statute in question, and they're definitive that there's one controlled substance offense in Pennsylvania, one and only one, and that various things that affect the sentence are not elements of that substantive crime. And key to this is their notion that, in particular, the underlying crime is a singular offense. It might have lots of different ways in which the sentence is impacted. Pennsylvania has a relatively complicated statutory scheme in terms of different related statutes which affect sentencing, but they're not part of the underlying offense. So there is one controlled substance offense. The courts have been definitive on this in cases where they're actually thinking directly, as opposed to Swavely, where it's sort of a passing use of the term. They're thinking about what are the elements of an offense, and they're saying... Let me interrupt you and ask, are you contending that where a statute describes a crime for marijuana possession, for example, that the quantity of marijuana or even the type of drug itself would not be an element but simply a means to the commission of the crime? It would depend entirely on how that statute is written, and I'm contending that this statute, that would not be the case. Yes. You know, if a statute said, if Pennsylvania chose to write a statute that said possession of marijuana in such and such a quantity falls under this provision, then absolutely that would be an element of the offense. We have a 2017 case. So in this crime, the 32.5 is simply descriptive and does not go to elements, even though that is something that would affect sentencing. I agree with that. The Pennsylvania courts have said that. In 2017, in a case, Rumpf, they said the amount of heroin that was involved in the sentence was part of grading the offense but was not part of the offense itself. Excuse me, Judge. Go ahead. Sure. Judge Gilman, I guess I'm questioning on Swavely. You say it was just a footnote and this and that, but it did decide on double jeopardy grounds that you could charge and the same overall prosecution, you had two different substances, and it wasn't a double jeopardy defense. Doesn't that pretty well tell you these are elements rather than just means? Well, it tells you there that they needed to prove a controlled substance. One of the controlled substances on the list was involved in that particular case. They had two different substances. They brought two separate sets of charges, but for either one of them, they needed to prove simply that there was a controlled substance involved with that. We have the court noting in an earlier case, Aguado, that they lay out the elements of what it takes to sustain their burden, and they possessed a controlled substance. They don't possess a particular one or a particular identity. Well, this is Judge Hood. We're all familiar with the gun laws, in particular 924C, and you can commit that in various ways, but if you're going to penalize it, the judge has to find, the jury rather, has to find that the defendant either used it or discharged it or brandished it, and each one of those had different penalties. The jury has to find those penalty elements as an element of the crime. Isn't this the same kind of deal? It was not in 1996 is my response to that. I think part of what makes this case interesting and difficult is that we're talking about a 1996 schedule of drugs, and we're talking about pre-Apprendi, pre-Allain. Allain was about brandishing a gun, and I think post-Allain, we would say categorically if he's found to be brandishing a gun, then that means the jury had to have found that, and we could categorically say that was part of what was found, but pre-those decisions, pre-Apprendi and pre-Allain, we can't categorically say what was done down below and what was established because those weren't the law of the land. McMillan was. I'd also say then another major point is once you move to the categorical approach, you don't get to still just dive into the facts and decide how an offense was committed. That's not part of what is permitted. You have a very limited range of what you can do with a modified categorical approach, and the Sixth Circuit's clear on this. We're not deciding how a crime was committed. We're deciding which crime was committed, and it's very clear that the crime that was committed was possession with intent to distribute a controlled substance. You could substitute in different drugs under that different controlled substances, but in the end of the day, the conviction's going to read controlled substance. We don't have, as some states do, as some laws do, differences based on what that conviction would be for. We'd never say you're convicted of violating Pennsylvania's Mandatory Minimum Sentence Act, even though Apprendi and Lane would tell us today that anything that impacted the Mandatory Minimum Sentence would have to go to a jury, but certainly that wasn't the case in 1996, and Mr. Raja did not have the benefit of those cases, and it was really clear in the Supreme Court that they had a narrow view of what was the substantive set of elements of a crime, and that sentencing factors and sentencing grading of offenses were completely separate from that, and I think the case law is clear. To the extent Swavely's in that mix, it's completely an outlier. It seems to be the only case that makes that claim, and that would run counter to the full and also, I'd add, the way the Pennsylvania legislature seemed to be defining their offenses and the way they did that. Mr. Brunson, out of the many cases that you've cited in your brief, which case do you say provides the strongest support for your position? Well, I think there's a number of them. I think, clearly, just simply McMillan, the pre-Apprendi, pre-Lane description of a Pennsylvania law that a case arose out of Pennsylvania talking about sentencing factors being separate, that was ratified by the Supreme Court as Pennsylvania's interpretation that sentencing was separate and not a substantive element, and then the various other cases are Pennsylvania in a variety of contexts bringing that up. Coleman is cited in a number of cases, and it says the legislature could have. They knew how to put this in as part of this, but they chose not to do it. So if they wanted to add a new element, they could have done it. They didn't do it. So I think the case law with Swavely being a complete outlier is fairly strong, that that's what Pennsylvania did, and when we're using the categorical approach, that's what we're looking at. What does that conviction at that place and that time tell us about what was categorically decided? I believe I'm out of time. I'm happy to keep talking, but I want to draw that to the court's attention. Well, just a moment. Judge Gilman, were you trying to get a question to him? Well, I was, but it was the same question you just asked. What is the strongest case? I've already covered it. Well, thank you, Mr. Johnson. You'll have your full rebuttal. Okay. Ms. Nula? Yes. We're ready to unmute. Okay. Thank you. Thank you, Your Honor. May it please the court, my name is Neelam E. Sanula, and I represent the attorney general in this matter. This court should follow the... Okay, before you get started, Ms. Nula, there's a little bit of noise, and Mr. Johnson, I'm going to ask you to mute your telephone while she's arguing. I will do that. Thank you, and let's see if this helps anything. And so the timekeeper will start the clock and because she was fading in and out, and there was some roaring noise that was on the line. So we'll start your 15 minutes now, Ms. E. Sanula. You may proceed. Thank you, Your Honor. May it please the court, my name is Neelam E. Sanula, and I represent the attorney general in this matter. This court should follow the Third Circuit's decision in United States v. Henderson and hold that the Pennsylvania statute under which Mr. Raja was convicted, Section 780-113A30, is a divisible statute with regards to drug type, and as such, it was entirely permissible for the agency to use the modified categorical approach to determine which controlled substance he was convicted of. In this case, we have to determine whether the Pennsylvania statute sets out a list of controlled substances as alternative elements of the crime, or whether the drug types are various means of committing the offense. In making the Means v. Elements inquiry, Mathis v. United States instructs us to first look at authoritative sources of state law, which might include a state court decision... Hello? Correct. Hello? I lost... I'm all straight. I'm here, if you can all hear me. Okay, I can hear you, but I'm not sure what the intruding voice was. I lost her there for a moment. Okay. All right, so that's court first mail. Okay, you may continue. In making the Means v. Elements inquiry, the Supreme Court's decision in Mathis v. United States instructs us to first look at authoritative sources of state law, which might include a state court decision that definitively answers the question of whether the fact we are dealing with is an element or whether it is a means. Here we have that kind of state court decision, which definitively answers the question of whether a drug type is an element of Section 780-113-830. Commonwealth v. Slavely is a 1989 case, meaning it predated Mr. Rajah's 1996 conviction. There, the Pennsylvania Superior Court held that the prohibition on double jeopardy wasn't violated, even though the defendant had received two consecutive sentences under the statute, one for delivery of a Schedule I substance called Tunel and another sentence for a Schedule IV substance called Tolwin, and even though the defendant had delivered these drugs in the same plastic vial during the same single sale. The defendant said this was double jeopardy because he had been punished twice for the same offense, and the court in Slavely held that double includes an element distinctive of the other, i.e., the particular controlled substance. The court went on to explain, convicting Slavely as to the charge involving Tunel required the jury to conclude that there had been a transfer of that drug to another person, of Tunel to another person, and convicting Slavely as to the charge involving Tolwin required the jury to conclude there was a transfer of Tolwin to another person. Thus, the Slavely court held Slavely wasn't being punished twice for the same offense because there were two separate offenses, and what made these two different offenses was the fact that there were two different types of drugs involved. Okay, Ms. Itzanula, let me interrupt you for a moment. I know you are describing Slavely, but let me call your attention to the case of Commonwealth v. Aponte decided by the defense of possession with intent to deliver is, quote, completely and exclusively, end quote, defined in 780-113A30. With that language about it being completely and exclusively defined, does that cut against your argument? And if not, why not? No, Your Honor, and I have to admit I've only read that case very quickly recently, but my understanding was that they were trying to explain in Commonwealth v. Aponte that the idea of a subsequent or a prior conviction was not an element of the offense. So when they were dealing with his subsequent conviction, that was a closed contained conviction, and the fact of a prior conviction was not being dragged into it as an element of the offense. And that's actually well-established case law that we have running throughout Supreme Court case law, too, that the fact of a prior conviction is not an element. It's an exception to the Appendee Rule that the fact of a prior conviction, even where it increases the maximum or minimum sentence, it doesn't turn into an element because it's this unique set of circumstances. And so I believe that's all what Commonwealth v. Aponte is actually saying. And the interesting thing I would point out, at page, I believe, 252 of Commonwealth v. Aponte, they discussed the McMillan case. And McMillan, as opposing counsel pointed out, it's a case dealing with mandatory minimum. So it's not as relevant here where we have drug type being a fact that increases the statutory maximum. Excuse me, I've again lost. I'm sorry, was that Judge Hunt? I've again lost the government here. Oh, I'm sorry. Okay, I'm sorry. So, Mr. Brunson, did you say you were disconnected again? I like the last 30 seconds here I missed. Okay. Page 252 of Aponte was the last thing I heard. Okay. Okay. So would you repeat yourself? And I'll give you that additional 45 seconds. And so, Mr. Brunson, don't try to mute your phone for me then, because I think that may be affecting your ability to stay connected. So just... Okay, thank you, Your Honor. Sorry. But 45 additional seconds, Ms. Isinula, and you can start over where he dropped off. I believe I was... Page 252? At page 252 of the Aponte decision, the court discusses McMillan, which the opposing counsel mentioned is a case dealing with mandatory minimums. And they discuss McMillan, and they talk about the fact that at page 87 to 88 of the decision, the court in McMillan explicitly left open the possibility that their ruling might have been different if they were dealing with the fact that increased the maximum penalty. So that sort of leaves open the door to Apprendi, the rule from Apprendi, that they might have, and which they would eventually, I think, several years later. But in Apprendi, they eventually found that a fact that increases the maximum penalty is an element of the offense. But McMillan doesn't conclusively answer the question of whether a fact that affects the statutory maximum, such as drug type here, is an element or not. It still leaves that question open. And so, I think what I'm trying to say is that there really isn't any case law that's been cited so far in the briefing that conclusively indicates that Pennsylvania was not treating facts like drug type that increased the statutory maximum as an element of the crime that needed to be found by the jury at the time of Mr. Raja's conviction. Okay. I want you to go back now and, again, tell me, Mr. Raja argues that the statute is indivisible and is not properly analyzed under the modified categorical approach. And we know the factors that one looks to assess divisibility, non-divisibility. What is wrong with Mr. Raja's argument? And why isn't he correct? Do you mind rephrasing that question? I'm sorry, Your Honor. Well, what I'm asking you, you know, he says that we should be looking at the statute and assessing it as an indivisible statute. So, he says we shouldn't analyze it under this modified categorical approach, but we should simply use a categorical approach. And I'm asking you, based on the state of the law that you referenced, I want you to go back and just focus and tell me, succinctly, why isn't he correct? Why isn't this an indivisible statute based on the factors that we have to look at? Well, because, so, because Mathis tells us that a statute is divisible if it lists elements in the alternative as opposed to means. And here, drug type is an element of the offense. And when we at those Pennsylvania drug schedules, they are disjunctively and exhaustively listing out alternative types of drugs that create the universe of possible convictions under the California drug statute. I mean, sorry, Pennsylvania drug statute. So, you know, that's why we're so focused on Slavely, because Slavely is telling us this is an element of the crime. Drug type is an element of the crime. If drug type is an element, then this is an alternatively phrased statute. And it's therefore divisible under Mathis, which focuses on elements versus means. Now, I know that's somewhat confusing when you look at the statutory text, because if you look at Section 780-113-830, it doesn't necessarily look like it's mentioning the drug types at all. But the fact is that those Pennsylvania controlled substances are, the schedules are being referenced and incorporated by reference into that statute. It's not unusual at all to, in the categorical approach, to look at other statutes that help define the statute of conviction. In Mathis, for instance, the court was dealing with a burglary conviction. But the statute that they actually analyzed in terms of divisibility was the statute that defines the term occupied structure under Iowa Code Section 702.2, which was a completely separate provision from the statute of conviction. So what we're doing here, where we're dragging in the Pennsylvania drug schedules into the statute of conviction, that is a proper way of conducting the controlled substance analysis. If you look at one of the cases cited in the briefing, Mihoos v. Sessions, 726 Federal Appendix 417, it conducts this very same analysis, where it was looking at whether the controlled substance statute, the Ohio controlled substance statute, was a controlled substance offense. It first looked at whether the schedules were overbroad, and when it determined it was, it then looked to determine whether the identity of the controlled substance was an element. Because if the identity of the drug was an element, then you have a divisible statute, and the modified categorical approach can follow. This is Judge Gilman. Is it because the penalties are different for different elements? That was the holding in United States v. Abbott. When it came to United States v. Henderson, which I believe is the first post-Mathis decision on looking at the divisibility of Section 780-113-830, they took a different approach. They first applied Mathis' three different elements of the offense. Then they looked at the face of the statute, and there they said, looking at the controlled substance schedules, they're written in the alternative, they're an exhaustive list, and that tells us that they're alternative elements, rather than mere illustrative examples or means. And then finally, they did what Mathis also tells us is an option in determining elements versus means. The Henderson court looked at the record of conviction. It took whether or not the statutory alternative was listed there. It looked and saw that I believe it was cocaine or heroin. I'm sorry, I can't remember the drug. But the name of the drug was specifically listed in the charging document. And that's the same here in Mr. Raja's case. Marijuana is specifically listed in the charging document, which is the criminal complaint, at page 438 of the administrative record. Mathis explains when we have that specific term in the complaint, as opposed to an umbrella term, like a term that drags in all those various means, such as premises and the burglary context, when we get that specific, that's a big clue that that's an element, as opposed to a means of the offense. You know, I just want to point out again about Swavely, that discussion about the element, about drug type being an element, it's very much a part of the text of the decision. I don't see it as a footnote. I also, you know, Swavely remains good law. It continues to be cited in at least up until 2013. There's a case called Commonwealth versus Smith, where the court applied and said that the merger doctrine did not apply where the defendant had been charged with three separate counts of possession, but the possession accounts all involved three different controlled substances. And so the court explained each would support a separate criminal count. The sentences would not merge. I'd also note that in the Ninth Circuit decision, United States versus Martinez-Lopez, it's an en blanc decision where they relied on a case law very similar to Swavely in holding that the California statute at issue also made the identity of the controlled substance an element of the offense and therefore rendered the statute divisible. You know, I understand my opposing counsel and Mr. Bajor making this argument about Swavely being undone by the fact that Pennsylvania law has distinguished elements from sentencing factors, but I do want to point out that this argument is new in the sense that it really is raised primarily in the reply brief. And so the government's position would be that this argument has been waived. If you look at page 17 of the opening brief, there's a brief discussion about the sentencing provisions, but it's certainly not an argument about Apprendi and Allain not being retroactive and the idea that the sentencing provisions under Pennsylvania law are never elements. That's not something we were able to address in our answering brief because it was raised for the first time in the reply. And so if the court intends to reach this issue, we would request, you know, maybe the opportunity for supplemental briefing. But ultimately our position is there are just so many indications here that drug type is an element of the Pennsylvania statute, even if the court doesn't have to reach this issue. Swavely didn't turn on sentencing at all. It merely identified drug type as an element that the jury had to find. So it didn't bring in these concerns that petitioner is raising about the treatment of sentencing provisions under Pennsylvania law. And I would point out also that jury instructions at the time of conviction as well as current jury instructions require the jury to specifically fill in a blank for the name of the controlled substance in those instructions so that they must identify the precise controlled substance at issue. Okay. I think you're out of time. Let me just check to see if either Judge Gilman or Judge Hood have questions. And if not, I think your time has expired. Judge Gilman? I'm okay. Judge Hood? I have no questions. Mr. Sinaloa, thank you for your argument. We will now hear from Mr. Brunson for his five minutes of rebuttal. Thank you, Your Honors. The notion that, you know, at trial, we're talking here about a categorical approach. So we're saying looking back at a conviction, in this case many years ago, what does the fact of that conviction actually tell us? What can we read if we see a rap sheet and it says you have a conviction for this? What do we categorically know? So, you know, even in Mathis, we had our different types of buildings and vehicles and all types of things. You know, when that was presented to the jury and the case was put on, I'm sure they said he burglarized whatever he burglarized. The question is not what was on that jury form or what were the allegations at that point. It's saying what was the fact of that conviction? What are we looking back categorically? Are we able to tell from that? And despite the fact that we may charge, you know, in a case, they have to say that a controlled substance was used. And so they are going to fill in the blank and they're going to say there was a, you know, conviction that, you know, defendant or the, you know, respondent in a criminal case is accused of particular drug in that case. But the fact of the conviction just says that a controlled substance that was on that schedule was involved. Otherwise, our whole overbreadth argument, which the government, I believe, has conceded that the schedule in 1996 was overbroad, really doesn't mean a whole lot. If we get to go through and say we don't really care about the schedule, we're going to look at the facts of how that person did that. Just to touch on a little bit, the unpublished Sixth Circuit decision, the court there makes quite clear, as it's looking at the Ohio version of a statute like this, that there are subsections that criminalize as separate and distinct crimes, the possession of various substances. It talks about the fact that different factors could make it an aggravated possession of drugs. Pennsylvania doesn't do that. They have one single conviction. They have one single statute. And then they differently. But if you look back at the record of the gentleman in Swavely, he's going to have two convictions for violating Section 113.830. He's not going to have different convictions that show differently for that. He's not convicted under 113F or any of the other various and many sentencing provisions. He's convicted under that singular statute that Pennsylvania has. I think that is what distinguishes this case from some of those others. We're not talking about a different view. And that means that when we think about the purpose for which we would use a modified categorical approach, because we're told we can only use it for a limited purpose, which statutory phrase is implicated? Well, we're not implicating any statutory phrase. We're not saying this is an aggravated case or this is a case with priors and this is a case with firearms. We're saying simply it is or isn't a conviction under 113.830. And that's the only crime. Just have a question. Where do you think then the Third Circuit went wrong in Henderson or Abbott? I think they went wrong in not looking to what the Supreme Court of Pennsylvania said about what's element of a crime. I think they saw suavely. I think suavely has a superficial appeal in terms of that argument. And I'll absolutely stand corrected by my opposing counsel about whether or not that's in a footnote. So I'm certain she's right on that, and I'm wrong. But we can check that. But we looked to the courts. Mathis is kind of a strange case, but it was influenced by the fact that the Iowa Supreme Court had said it doesn't matter which of these things the jury finds. They had agreed on that. And so they looked to Iowa law. And I think here, when looking to Pennsylvania law, the court saw one case, they discussed one case. At the very least, if you're going to rely on suavely, I think you have to contextualize and distinguish all the other case and all these cases that come out very strongly in their wording the other way, saying we distinguish substance from sentencing factors. And I think the Third Circuit didn't go that deep on it. I think when you go deep, you find out that it's not an element, or at least it wasn't an element in 1996. And I think that's important for the court to keep in mind that things may be different post-Elaine, as we look at those. But clearly, in terms of what was happening back then, the court and the legislature of Pennsylvania, the statutes under which a respondent here was convicted are what they were. Okay. Mr. Thronson, thank you for your rebuttal argument. Let me check. Judge Gilman, do you have further questions? No, I'm okay. Judge Hood, do you have further questions? I do not. Thank you, Judge. All right. Mr. Thronson and the Michigan Legal Clinic, the court wishes to thank you all for undertaking a representation in this case. For the parties, we thank you for your argument. The matter is submitted, and we will render our decision in due course. The court may disconnect the lawyers and then instruct us on the procedure for the conference. Chantel? Thank you very much. Thank you. Could you just confirm when the attorneys have disconnected, please? I'm disconnected. No. The attorneys are now disconnected. Chantel? We still hear you, Joe. The attorneys have disconnected. Okay. Thank you. Judge Donald? Yes, I'm here. Okay. The attorneys have disconnected. I'm just going to disconnect from the courtroom, and the judges can confer privately. Thank you. Thank you, Judge Donald.